Filed 9/3/13  P. v. McCoy CA5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | F064816 & F065075 |
| v. | (Super. Ct. Nos. BF136782A & BF135575A) |
| JOSEPH DANIEL MCCOY, | **O P I N I O N** |
| Defendant and Appellant. | |

### THE COURT\*

APPEAL from a judgment of the Superior Court of Kern County.  Michael B. Lewis, Judge.

Sara H. Ruddy, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Kathleen A. McKenna and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*       Before Cornell, Acting P.J., Kane, J., and Franson, J.

Pursuant to a plea agreement, on April 22, 2011, in Kern County Superior Court case No. BF135575A, appellant, Joseph Daniel McCoy, pleaded no contest to making criminal threats (Pen. Code, § 422)[1] and the court conditionally dismissed four other felony charges.

On July 25, 2011, an information was filed in Kern County Superior Court case No. BF136782A, charging appellant and his mother, Darlene Green, with one count of elder abuse under circumstances likely to cause great bodily injury or death (§ 368, subd. (b)(1)), and alleging that appellant and Green inflicted great bodily injury on a person 70 years of age or older (§ 368, subd. (b)(2)(B)) and proximately caused the victim's death within the meaning of section 368, subdivision (b)(3)(B). We refer to case No. BF136782A as the elder abuse case.

On January 4, 2012, appellant entered into a new plea agreement covering both cases. Pursuant to this plea agreement, the following occurred:

First, the information in the elder abuse case was amended to add an enhancement allegation under section 12022.7 (personal infliction of great bodily injury), the court conditionally dismissed the special allegations under subdivisions (b)(2)(B) and (b)(3)(B) of section 368, and appellant pleaded no contest to the elder abuse charge and admitted the great bodily injury enhancement allegation.

Second, in case No. BF135575A, the criminal threats charge, to which appellant had previously pleaded no contest was dismissed pursuant to section 1385 and the information was amended to add a charge of infliction of injury on a domestic partner (§ 273.5, subd. (a)), to which appellant pleaded no contest. We refer to case No. BF135575A as the domestic violence case.

---

[1]    All further statutory references are to the Penal Code unless otherwise indicated.

The plea agreement provided that appellant would receive a prison term of five years, consisting of the two-year lower term plus three years for the accompanying enhancement in the elder abuse case, and a concurrent three-year term in the domestic violence case.

On April 20, 2012, the court imposed the agreed-upon five-year sentence. The court also imposed presentence custody credits as follows: in the domestic violence case 876 days, consisting of 438 days of actual time credits and 438 days of conduct credits, and in the elder abuse case, 403 days, consisting of 351 days of actual time credits and 52 days of conduct credits. The court subsequently awarded appellant an additional day of custody credits, bringing the total to 404 days.

On April 23, 2012, appellant filed a notice of appeal in the elder abuse case and the appeal was given the case number F064816. On May 31, 2012, appellant filed a notice of appeal in the domestic violence case and the case was given the case number F065075. In each case, appellant requested, and the court issued, a certificate of probable cause (§ 1237.5). On January 4, 2013, this court ordered the two appeals consolidated under case No. F064816.

In his appeal in the domestic violence case, appellant's appointed appellate counsel has filed an opening brief which summarizes the pertinent facts, with citations to the record, raises no issues, and asks that this court independently review the record. (*People v. Wende* (1979) 25 Cal.3d 436.) Appellant has not responded to this court's invitation to submit additional briefing.

In the elder abuse case, appellant contends he is entitled to 503 days of presentence custody credits, not 404 days as determined by the trial court. Respondent concedes the point.

We modify the judgment to provide that in the elder abuse case, appellant is awarded 503 days of presentence custody credits, and affirm as modified.

3

# FACTUAL AND PROCEDURAL BACKGROUND

*Facts – The Elder Abuse Case[2]*

On the evening of February 11, 2011 (February 11), paramedics, responding to a call, went to a house where, in a back bedroom, Margaret Gray, was lying on a bed. She was covered in her own feces, she had open sores on her back, feet and legs, and her skin was fused into the fabric of the mattress, so that when paramedics moved her, her skin came off. One of the paramedics estimated that Gray had been lying in the bed for at least one month and "probably several months."

Paramedics took Gray to the Kern Valley Hospital emergency room. The physician who treated her there testified to the following: Gray had "ulcers of different ages on her entire body." One of the ulcers was of a sort that takes at least two weeks to form. Such ulcers are caused by the person not being moved.

Later in February 2011, Gray was moved to a skilled nursing and long-term care facility, where she died on April 1, 2011. The physician who treated her there testified Gray's condition when she arrived was very poor and she never improved. She had ulcers on her body which caused infection, which in turn led to multiple organ failure, the cause of death.

On February 11, Kern County Deputy Sheriff Marco Vazquez went to the home where paramedics had found Gray, arriving while the paramedics were still there. Gray's daughters, Darlene Green and Barbara Mendez, were also there. Mendez told Vazquez that appellant, who was Gray's grandson, was Gray's "caregiver" and that he was paid for his services.

---

**2**     Our factual summary of the elder abuse case is taken from the preliminary hearing transcript in that case.

On February 23, 2011, Vazquez interviewed appellant at the Lerdo pretrial detention facility, where he had been in custody since February 8, 2011, when he was arrested in the domestic violence case. Appellant stated he was Gray's "primary caregiver," he had acted in this capacity since July 1999 and for performing that service he was paid $9.50 per hour.

*Facts – The Domestic Violence Case*[3]

At approximately 12:50 p.m. on February 8, 2011, Kern County Deputy Sheriff Eric Hughes was driving in his patrol car when he saw a woman sitting in a car, leaning against the passenger window, covering part of her face and head with her hand. She appeared to be afraid. Hughes pulled in behind the car, at which point the woman jumped out and ran to the side of the road. Appellant was the driver of the car; he drove away.

The woman identified herself as Doreena McCartney. The right side of her face was swollen, and she had a bruise between her eyes above her nose. She told Hughes the following:

She had been at a friend's residence earlier when appellant arrived. She heard him honking his car horn and when she came outside he grabbed her by the hair, hit her several times in the face and started dragging her to the car, at which point she fell down. Appellant then stomped on her head, reached down and grabbed her by the hair, hit her several more times, dragged her to the car and "threw her in ...."

Appellant then drove to his house, where he forced McCartney out of the car and hit her several more times as he "forced and pushed" her inside. Inside the house he hit

---

**3** Our factual summary of the domestic violence case is taken from the preliminary hearing transcript of that case.

McCartney was several more times. Appellant's mother was present in the house. Appellant told her he was going to kill McCartney.

Thereafter, appellant forced McCartney out of the house and into the car, and drove to a gas station. There, McCartney, in an attempt to get out of the car, got the door partially opened but appellant grabbed her, told her that if she did get out he would kill her, and forced her back into the car. Appellant then drove back in the direction of his house, but as he was driving he saw Deputy Hughes's patrol car. Shortly thereafter, appellant stopped the car and McCartney was able to jump out.

Appellant is McCartney's ex-boyfriend. She and appellant have one child together.

### Procedural Background

On February 2, 2012, at the time set for sentencing, appellant informed the court he wanted to withdraw his plea. The court continued the sentencing hearing. On February 29, 2012, appellant filed a notice of motion "for a hearing pursuant to *People v. Smith* (1993) 6 Cal.4th 684," in which he asserted that under *Smith*, "when a defendant wishes to withdraw his plea, a hearing similar to a so-called '*Marsden* hearing' (*People v. Marsden* (1970) 2 Cal.3d 118) must first be conducted to determine whether the defendant is alleging grounds that might require the appointment of new counsel for purposes of withdrawing his plea."

On March 2, 2012, at a hearing with only appellant, defense counsel and court personnel present, the court "granted" the motion, relieved appellant's attorney as counsel, and appointed the "indigent defense panel" to represent appellant.

On April 6, 2012, appellant's new counsel filed a notice of motion to withdraw appellant's plea, along with a supporting memorandum of points and authorities in which he asserted appellant's plea "was not knowingly, intelligently, and voluntarily made because [appellant's counsel at the time of the plea] was ignorant of potentially

6

meritorious defenses to the charges." Specifically, he argued as follows: In *People v. Heitzman* (1994) 9 Cal.4th 189, 212, the California Supreme Court held that in order for criminal liability to arise under section 368 for permitting an elder to suffer unjustifiable pain or suffering, "a defendant must stand in a special relationship to the individual inflicting the abuse on the elder such that the defendant is under an existing duty to supervise and control that individual's conduct." Although appellant had been employed by a social service agency to act as Gray's caregiver, he was terminated from that employment on December 31, 2010, and therefore "during the month[s] of January and February of 2011 [appellant] was no longer in a special relationship with the victim."

A hearing on the motion was conducted on April 20, 2012. At that hearing, appellant testified consistent with the claims asserted in his moving papers. He also testified he continued to live with Gray after his employment ended up to the day he was arrested on February 8, 2011. During that time, he confirmed, he was "the one that was there day in and day out to see what was going on with her ...." He claimed he did not tell Deputy Vazquez that he was Gray's paid caregiver from 1999 until he was arrested in February 2011. Appellant did not testify that at the time he entered his plea he was unaware of the defense discussed above.

The court denied the motion.

### DISCUSSION

#### Domestic Violence Case

Following independent review of the record, we have concluded that no reasonably arguable legal or factual issues exist.

#### Elder Abuse Case

As indicated above, appellant argues, and the People concede, that in the elder abuse case the court failed to award him the correct number of presentence custody credits. The parties are correct.

7

## Background

Appellant was arrested in the domestic violence case on February 8, 2011, and he remained in custody from that date through April 20, 2012, a period of 438 days. His award of custody credits in the domestic violence case included 438 days of actual time credits. On February 11, 2011, as indicated earlier, appellant's grandmother, the victim in the elder abuse case, was found in her home in extremely poor physical condition.

The report of the probation officer states appellant was not arrested in the elder abuse case until February 17, 2011. The criminal complaint in that case was filed May 11, 2011. The court's initial award of actual time custody credits included 351 days of actual time credits, reflecting time in custody from February 17, 2011, through February 22, 2011, and May 12, 2011, through April 20, 2012, a total of 351 days. Subsequently, the court awarded appellant one additional day of actual time credit which, with its award of 52 days of conduct credit, brought the total custody credit award to 404 days.

## Analysis

Section 2900.5, subdivision (b) allows presentence credit to be given "only where the custody to be credited is attributable to proceedings related to the same conduct for which the defendant has been convicted." As the parties agree, "when concurrent sentences are imposed at the same time for unrelated crimes, the defendant is entitled to presentence custody credits on each sentence, provided he is not also in postsentence custody for another crime." (*People v. Kunath* (2012) 203 Cal.App.4th 906, 908.)

Here, appellant was sentenced at the same time for two unrelated crimes, and the court imposed concurrent sentences for those crimes. Therefore, appellant is entitled to full credit for the time spent in presentence custody in both cases. Accordingly, we will modify the judgment to provide that in the elder abuse case, appellant is awarded full

8

credit, i.e., 438 days of actual time credit and 65 days of conduct credit (§ 2933.1, subd. (c)), for a total of 503 days of presentence custody credit.[4]

## DISPOSITION

The judgment is modified to provide that in the elder abuse case (Kern County Superior Court case No. BF136782A) appellant is awarded 503 days of presentence custody credits, consisting of 438 days of actual time credits and 65 days of conduct credits.  The trial court is directed to prepare an amended abstract of judgment that reflects this modification and to forward a certified copy to the Department of Corrections and Rehabilitation.  As modified, the judgment is affirmed.

---

[4] The court correctly found that the determination of appellant's conduct credits (§ 4019) in the elder abuse case was governed by section 2933.1, subdivision (c).  That statute limits section 4019 conduct credits to 15 percent of the actual period of presentence confinement, where, as here, the defendant is convicted of an offense listed as a "violent felony" in section 667.5, subdivision (c).  (§ 2933.1, subd. (c), § 667.5, subd. (c)(8) [violent felonies include "Any felony in which the defendant inflicts great bodily injury on any person other than an accomplice which has been charged and proved as provided for in Section 12022.7"].)  When the 15 percent limitation of section 2933.1, subdivision (c) is applied to the actual period of confinement of 438 days, the result is 65 days of conduct credits.